The next case is also Lank Laboratories v. Samsung, 23-1935, Mr. McBride. Thank you, Your Honor. May it please the Court. The issue here is the construction of the term receiving power wirelessly. The Board in the final written decision below, sua sponte, construed the term wirelessly, as without the use of a wire, without any prior notice to either party. Thus, this is a new construction entitled to de novo review on appeal. The proper construction for receiving power wirelessly is receiving power from an external source not physically connected to the apparatus. And we made this construction on appeal because the Board of the Petitioner's construction takes the position that all capacitors necessarily transfer power wirelessly. But Petitioner's evidence for the Board's construction and the Board's evidence as well only discloses that circuits can be designed to use capacitance for wireless power transfer in certain circumstances and certain applications. Neither the Board nor the Petitioner identifies anything in the intrinsic record that supports the Board's construction. In fact, the 298 patent contradicts the Board's construction. Claim 6 requires receiving power wirelessly in the apparatus, where the apparatus includes an LED circuit. So the apparatus is actually receiving power wirelessly from the external circuit and is in the context of the wireless power transfer in an LED circuit. So it's in a specific context of the 298 patent, not just the term wirelessly in a vacuum. Claims 1, 7, 9, 10, and 21 and 22, these are the other claims that discuss the term wireless power transfer. If we disagree with you on the claim construction question, is the case over or do you have other arguments? I'm sorry, if you do not agree? If we do not agree with you, if we agree that the Board correctly construed. I think the appropriate thing would be to remand so that the patent owner would have the ability to brief the issue in front of the Board. Brief what issue? The proper construction for the term wirelessly. No, let's assume we disagree with you and we think the Board was correct in its construction. Are you left with any arguments on substantial evidence of the application of that construction in this case? Yes. So substantial evidence would be that in the Burrell reference itself, it talks about connecting a lighting panel to the wall in order to form a wired circuit with capacitors. It refers to this as a direct connection circuit. I may be misunderstanding. I understand the question to be, if we agree with the Board's construction, do you challenge its finding that there was substantial evidence for what they found, the obviousness or anticipation of your claims? For Claim 6 on the Burrell reference, yes, Your Honor. So the only issue that would be left for us if we agree with the Board on the construction is the Claim 6? That's correct. That's the only issue on appeal. But to go back to Burrell, it actually distinguishes between the use of the direct connection circuit and wireless communications. And that's it. That's it. Burrell at Appendix 1190, lines 14 through 24, it talks about data communications between devices or elements may be achieved by means of wireless techniques such as radio frequency. So that's one option. Infrared, that's a second, it's not relevant here. Or direct connections such as modulation of the external power source used by the device. So Burrell is distinguishing between the direct connection technique of forming capacitors by the light tile attaching to the wall and wireless techniques. So Burrell itself says it is not wireless. And that's one of the things we've relied on in terms of our construction as evidence of what a person of ordinary scaly art would understand. The other parts of the intrinsic record also support our construction. The claims that refer to wireless power transfer are talking about transferring from one device to another. You can see that in Claim 1, for example. There are various other claims that claim either the transmitting device or the receiving device for wireless power transfer. So that's why we've used the term receiving power from an external source not physically connected to the apparatus. Because that's what the claims are talking about. The specification also supports this. There are a number of references to receiving wireless power RF signals in the specification. But we've highlighted figure 37 and figure 51 in our briefing. And they both show an antenna receiving an external source from receiving a signal from an external source. So the antenna is receiving an RF signal or something like that that is providing power to the circuit that is claimed. And I would call your attention to 298 patent figure 51, for example. That's appendix 94. The 298 patent refers to antenna 260 in figure 51 as a generator that can be used in place of generator 2061. So if you look at figure 51, the symbol for generator 2061 is an AC power supply. And the antenna 2060 is also referred to as a generator that is a substitute or an alternate for that power supply. So this is how the 298 patent is talking about receiving wireless power. Anything further, counsel? Yes, your honor. Moving on to the issue here from the board's decision in terms of whether Burrell's capacitors teach wireless power transfer. The 298 patent actually discusses capacitors as wired circuit components that are part of a single wired circuit. So the 298 patent in the figures it's talking about, and this is discussed in our opening brief from 19 to 22, has a number of references to capacitors as circuit components. And they're never used in the context of wireless power transfer. This is a substantial evidence question, correct? And the board discussed it, I think, at page appendix 50 and 51, credited their expert from U.S. experts counter testimony not persuasive. What do we do with that on appeal? Well, your honor, that wasn't counter testimony. That was the expert's testimony in the patent owner's response. So I'm looking at the board's opinion. I'm quoting the board's opinion. Right. Thank you, your honor. And what I'm trying to explain is he wasn't addressing the construction for the term wirelessly. He was just discussing whether Burrell was disclosing wireless power transfer. So he didn't actually address a construction of the term wirelessly. Well, what the board says, appendix 51, may be a misunderstanding, that the counter testimony is not persuasive because he does not explain in any detail why one of ordinary skill in the art would not understand a capacitive coupling that transfers power to be a wireless system. Yes, he was explaining Burrell and why Burrell does not transfer power wirelessly, which is why when the board, is why he wasn't relying on intrinsic testimony because he wasn't providing a construction at that point. This was his opening testimony. There's no rebuttal testimony he's entitled to. So he's saying, he's talking there about claim six, and he's explaining that Burrell is talking about a wired circuit where you connect the panel with magnets to the wall and form capacitors through that. And as part of that, he's saying these are ordinary capacitors and not transferring power wirelessly. So in reply, petitioner inserted intrinsic evidence arguing that capacitors can be used in certain circuits to transfer power wirelessly. But that doesn't mean that in every circuit, capacitors are used to transfer power wirelessly. And that's the gap here between the petitions and between the constructions. Does that answer your question, your honor? Yeah, at this point I have nothing further to reserve the rest of my time. We will save it for you. Thank you, your honor. Mr. Timofeyev? Thank you, your honor, and may it please the court. This is fundamentally a sufficiency of the evidence appeal. This is not a claim construction challenge. First of all, the board was correct in giving it a term wirelessly, it's plain meaning. And we would argue that Link does not contend that Burrell does not anticipate claim six under the board's plain reading. And in fact, it cannot actually legitimately contend that. As the board observed, there is no dispute that capacitive coupling in Burrell does not use a wire or any other form of direct contact to transmit power. This is at appendix 49. And Link's own expert conceded that Burrell's capacitive coupling has no direct wire connection between the power source and the lightning tile. This is at appendix pages 50 to 79, 50 to 80. Moreover, Link never presented its claim construction of the term wirelessly that it advocates now and it cannot do so for the first time on appeal. Secondly, even if the board is deemed to have implicitly construed the term wirelessly, that construction is correct and the board's anticipation finding is amply supported by substantial evidence. The board correctly noted that nothing in the claim language or specification excludes the use of capacitors to receive power wirelessly. And the board credited the extensive evidence we presented that the use of capacitive coupling to transfer and receive power wirelessly was well known in the art. Moreover, with respect to Burrell, the board expressly observed that particular advantage of Burrell and Burrell's use of capacitive coupling is that the device may be coupled to the power source without requiring any direct connection between the conductive elements. That's also at appendix 49. And that is so because Burrell permits the lightning tile to be easily removed and replaced on the supporting surface without any damage. Moreover, as we argued in our brief, even if Burrell actually would disclose receiving power wirelessly even on the Link's construction, Burrell contains an NHS supporting surface with an external power source and no direct wire connection to Burrell's lightning tile. Again, Link's own expert acknowledged that there is no direct wire connection to capacitive coupling in Burrell. So therefore, Burrell's capacitors would disclose receiving power from an external source which is not physically connected to the apparatus, which is the construction, the way of construction that Link now presses on appeal. I appreciate you went through all the steps. It's hard for me to see how it's not at least in part a claim construction dispute. It doesn't, the question of whether two devices are wirelessly in connection with one another, whether it requires that they be physically separate or not, isn't that a question of the scope of the claims and therefore it just is a claim construction question? Ilana, I think there is a question of what the term wirelessly means. So I think what we are arguing is that the board gave it the plain language meaning, which is correct in this situation. So I think whether the court would characterize the question of a plain meaning as a dispute about claim construction or not, we would argue the court really doesn't need to decide that here. Even a plain meaning would go to what is the scope of the claim? Ilana, that is correct, right. I think, again, here the board's construction is, we would submit, it is correct, whereas as the board said, there is nothing in the specification that would contradict that construction. The term wirelessly is most plainly read to mean it is something, it is without the use of wires. And if the court actually, if a court needs some reference in the intrinsic evidence, it can look at Appendix 111 at Column 3, Lines 44-44, where in the background in the invention, this pattern discusses that it is possible to transfer power without any wires. So again, the plain meaning of the term wirelessly in this context is without any wires, without use of the wires, which was the board's, the board's either plain reading or the board's construction. Thank you. Unless the court has other questions, we are prepared to rest on our briefs. Thank you, counsel. Mr. McBride has some rebuttal time. Thank you, Your Honors. Yes, as Judge Stark was pointing out, we do view this as a claim construction issue. It was not briefed below. The term, the meaning of the term wirelessly was not briefed and that is why when the board went to look for intrinsic evidence, it didn't find any because the parties hadn't briefed this as a claim construction. Can you speak up a little bit? I apologize, Your Honor. That is why when the board in its final decision engaged in this claim construction analysis, it did not find any intrinsic evidence because the board, because the parties had not briefed it as a claim construction issue. So we do believe this is a claim construction issue. We believe that at this point, there is no intrinsic evidence that the other party is relying on in order to support the board's construction. The board is not relying on the intrinsic evidence, but Patent Owner has put forward intrinsic evidence for a different construction. So we think the board can reverse here or if not, we do think this is an APA violation and would be subject to remand. Did you argue it's an APA violation in your brief? We did not, Your Honor. So that's not before us, is it? We did not brief, Your Honor, no. One of the things that the petitioner just said is that Burrell teaches that there is a space between its capacitive elements. All capacitors have a dielectric between the two capacitive plates. That's how they're formed. This is not an air gap or anything like that. This is just the way you make a capacitor. It's a circuit component. What Burrell does not teach is any kind of wireless power transfer across a capacitor. And that's what the root of the dispute goes to. Petitioner did mention the 514 patent at column 3, lines 33 through 34. We would contend that's consistent with our construction as well. It's talking about 100 years ago, providing wireless power to electric motors, to inductors and things like that. And that's what the claims use when they talk about how the wireless transfer of power is performed, is induction. Thank you, Your Honor. And unless there are any other questions, I'll rest. Thank you, counsel. The case is submitted.